1  Howard M. Garfield (Bar No. 43369)
   *hgarfield@hbblaw.com*
2  Omar Parra (Bar No. 303041)
   *oparra@hbblaw.com*
3  HAIGHT BROWN & BONESTEEL LLP
   Three Embarcadero Center, Suite 200
4  San Francisco, California 94111
   Telephone:  415.546.7500
5  Facsimile:  415.546.7505

6  Attorneys for ADG CONCERNS, INC. d/b/a HEALTH CONCERNS, a Washington corporation, and GOODE, INC., a Nevada corporation

7

8                **UNITED STATES DISTRICT COURT**

9        **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

10 | ADG CONCERNS, INC. d/b/a HEALTH CONCERNS, a Washington corporation, and GOODE, INC., a Nevada corporation, | Case No:  4:18-cv-00818 |

11

12                Plaintiff,

13         v.

14 TSALEVICH LLC,

15                Defendant.

16

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C § 1114; 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(c); TORTIOUS INTERFERENCE AND RELATED CLAIMS**

**DEMAND FOR JURY TRIAL**

17

18

19         Plaintiffs ADG Concerns, Inc. d/b/a Health Concerns ("Health Concerns") and Goode, Inc.

20 ("Goode") (collectively, "Plaintiffs") bring this action against Defendant Tsalevich LLC

21 ("Tsalevich" or "Defendant") for trademark infringement in violation of the Lanham Act,

22 15 U.S.C. § 1114 and 15 U.S.C. § 1125; false advertising in violation of the Lanham Act, 15

23 U.S.C. § 1125(a)(1)(b); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a);

24 trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark

25 infringement; trademark dilution in violation of Cal. Bus. and Prof. Code § 14247; unfair and

26 deceptive business practices in violation of Cal. Bus. and Prof. Code § 17200, *et seq.*; false

27 advertising in violation of Cal. Bus. and Prof. Code § 17500, *et seq.*; and tortious interference with

28 contractual and business relationships, and alleges as follows.   These claims arise out of

Haight

Defendant's misappropriation of Plaintiffs' trademarks in conjunction with Defendant's unlawful and unauthorized sale of Health Concerns®-brand products on the Internet.

## PARTIES

1.  Plaintiff ADG Concerns, Inc. d/b/a Health Concerns is a Washington corporation with its principal place of business in Oakland, California.

2.  Plaintiff Goode, Inc. is a Nevada corporation with its principal place of business in Oakland, California.

3.  Defendant Tsalevich LLC is a limited liability company, organized under the laws of the State of New York, with its principal place of business in Staten Island, New York,  that operates and does business as the "Premium Health INC" storefront on www.amazon.com ("Amazon").

## JURISDICTION

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.  Health Concerns' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the state law are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

5.  This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of doing business in California, including advertising and selling infringing products in California and shipping products to California, and has directed its tortious activities toward California by infringing on Health Concerns' trademarks with the knowledge that its actions would likely injure Health Concerns in California, such that Defendant could reasonably expect to be haled into court in California.

## INTRADISTRICT ASSIGNMENT

6.  The Oakland Division of this Court is the appropriate venue for this matter because a substantial part of the events giving rise to the claims herein occurred within the Oakland Division of this Court.

///

Haight

**FACTUAL ALLEGATIONS**

**Health Concerns And Its Trademarks**

7.     Health Concerns manufactures and distributes ingestible, high-quality herbal products, formulas, and dietary supplements.  Health Concerns sells its products exclusively through its own website and its network of authorized distributors, retailers, and resellers ("Authorized Resellers").

8.     Health Concerns devotes a significant amount of time, energy, and resources toward protecting the quality and value of its brand, products, name, and reputation.  By distributing products exclusively through its own website and its Authorized Resellers, Health Concerns is able to ensure the safety, well-being, and satisfaction of consumers and maintain the integrity and reputation of the Health Concerns brand.  In the highly competitive health and nutrition market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

9.     To promote and protect the Health Concerns brand, Goode has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: HEALTH CONCERNS® (U.S. Trademark Reg. Nos. 2,308,965 and 2,344,812); UN DRUG® (U.S. Trademark Reg. No. 1,428,976); WOMAN'S BALANCE® (U.S. Trademark Reg. No. 2,073,816); MARROW PLUS® (U.S. Trademark Reg. No. 2,113,855); ENHANCE® (U.S. Trademark Reg. No. 2,248,862); HERBAL HELPLINE® (U.S. Trademark Reg. No. 2,340,279); DIGESTIVE HARMONY® (U.S. Trademark Reg. No. 2,326,719); MENAPLEX® (U.S. Trademark Reg. No. 2,326,720); ASPIRATION® (U.S. Trademark Reg. No. 2,391,563); HEAVENLY WATER® (U.S. Trademark Reg. No. 2,465,141); FERTILE GARDEN® (U.S. Trademark Reg. No. 2,389,819); and ESSENCE CHAMBER® (U.S. Trademark Reg. No. 2,389,820) (collectively, the "Health Concerns Trademarks").

10.     Goode owns the Health Concerns Trademarks and has licensed them to Health Concerns.

11.     The registration for each of the Health Concerns Trademarks is valid, subsisting, and in full force and effect.  Pursuant to 15 U.S.C. § 1065, the Health Concerns Trademarks serve

as conclusive evidence of Goode's ownership of the marks and Plaintiffs' exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of Health Concerns products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

12.     Goode filed the HEALTH CONCERNS® trademark on October 15, 1998, and it was registered on January 18, 2000.   Health Concerns has actively used the HEALTH CONCERNS® trademark since that time.

13.     Health Concerns actively uses, advertises, and markets all of the Health Concerns Trademarks in commerce throughout the United States.

14.     Consumers recognize the Health Concerns Trademarks as being associated with products at the leading edge of research and quality in herbal medicine.

15.     Health Concerns is known for bringing the centuries of knowledge amassed in the Chinese herbal tradition to the West, as Health Concerns was the first company to manufacture Chinese herbal products in the United States for practitioners.   Since that time, Health Concerns has continued to research, test, and adapt traditional formulas by applying the science of modern biochemistry.

16.     Consumers identify the Health Concerns name as offering a variety of formulas for a full range of TCM (Traditional Chinese Medicine) treatment protocols, as well as many products that address the specific conditions of Western patients.

17.     The Health Concerns name is recognized for the quality of its products, which has been remarkably consistent and dependable over the years.   Since its inception, Health Concerns has been committed to taking all possible measures to guarantee safe herbs, free of contaminants or harmful ingredients.

18.     The Health Concerns name is also recognized by healthcare practitioners and consumers as providing a reliable, worry-free source of effective, quality Chinese herbs. Healthcare practitioners and consumers associate the Health Concerns name with stringent herb sourcing, quality controls, and testing for maximum potency and purity result in Chinese herbal formulas.

///

19.     For all of these reasons, the Health Concerns Trademarks are widely recognized by the general consuming public of the United States and Health Concerns is recognized as the source of products bearing the Health Concerns Trademarks.

20.     Due to the superior quality and exclusive distribution of Health Concerns products, and because Health Concerns is recognized as the source of high quality products, the Health Concerns Trademarks have substantial value.

**Online Marketplaces And The Challenges They Present To
Health Concerns Product Quality**

21.     E-commerce retail sales have exploded over the past decade.  From 2007 to 2017, the percentage of retail sales that were completed through e-commerce channels rose from 3.1% to 8.2%.   https://www.digitalcommerce360.com/2017/02/17/us-e-commerce-sales-grow-156-2016/; https://fred.stlouisfed.org/series/ECOMPCTSA.

22.     In 2016, consumers spent $394.86 billion on e-commerce sales, a 15.6% increase from 2015.  *Id*.  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  For example, in 2016 United States consumers spent $147.0 billion in e-commerce sales on Amazon, a 31.3% increase from 2015.  *Id*.

23.     While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

24.     The marketplaces allow third-parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers.  As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her identity to the consuming public.

25.     It is common for these unauthorized sellers to sell diverted products well past their expiration date or to mix fake or diluted products in shipments to unwitting consumers. https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.  Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these marketplaces

and think that the products they are buying through these marketplaces are genuine. https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

26.     Because these diverters operate anonymously, a manufacturer has no ability to exercise its quality controls over the products they sell or to ensure that the products are safe.  The manufacturer's inability to exercise control over the quality of these products presents serious risks to the health and safety of consumers – particularly where, as here, the product is ingested by the consumer.

27.     The reality of online marketplaces also poses threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

28.     When purchasing product on a marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers.  Indeed, on some marketplaces, all sellers are listed under one product listing.

29.     When a customer purchases a product on a marketplace and receives a damaged, defective, expired, or poor quality product, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller.

30.     The online marketplaces give disgruntled customers a powerful and convenient forum to air their grievances – product reviews.  Any consumer who is dissatisfied with a product he/she receives can post a review on the marketplace for all other consumers to see.  Most often, these reviews, which are often permanently fixed, will criticize the brand/manufacturer, not the seller.

31.     These product reviews have significant impact on a brand's reputation.  Survey results show that 82% of United States adults sometimes consult online reviews when buying a new product online and 40% "always" or "almost always" consult reviews. http://www.pewinternet.org/2016/12/19/online-reviews/.

32.     Consumers place extraordinary trust in these online reviews, as they are more than 10 times more likely to rely on consumer-generated product reviews than product descriptions written by manufacturers.     https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

33.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings.   According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product. https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

**Health Concerns Has Been The Target Of Multiple Negative Online Marketplace Reviews**

**From Customers Who Purchased Products**

**From Unauthorized Sellers**

34.     Health Concerns has been a victim of the issues caused by unauthorized sellers on the online marketplaces.   Indeed, Health Concerns has received several negative online marketplace reviews from customers who purchased products from unauthorized sellers.

35.     On January 1, 2016, a customer, Terry, complained that he received a contaminated product: "Seal on bottle was broken, pills were contaminated."

36.     On March 28, 2016, another customer, VRusso, complained that he received a poor quality product: "I've been taking Calm Spirit for several years and this is the first time I received this terrible quality product.   The caps actually disintegrate when I touch them.   I have some left from other shipment and it's a totally different product – including cor[e] and consistency.   This looks like wood dust pressed as caps.   I'm not taking this!"

37.    On July 15, 2016, a customer complained that he received a poor quality product: "About half the pills came in powder form.  Very disappointed with the product.  Returning."

38.    On July 26, 2016, a customer complained that he received a poor quality product: "Many of the tablets in this bottle are crumbled or crumble when I take them out of the bottle.  My last bottle I received was a like this too but this container has many more.  I have been ordering this product for the last 2 years and something has happened to the quality."

39.    On September 20, 2106, a customer complained that she received an expired product:  "I received this bottle in May.  Just looked at the bottom of the bottle, it expired 12/15."

///
///
///
///

40.     On October 6, 2016, another customer, Ashley, complained that she received an expired product: "The product was expired and crumbled when touched."

> ⭐☆☆☆☆ **One Star**
> By Ashley on October 6, 2016
> Size: 270 Count | Verified Purchase
>
> The product was expired and crumbled when touched.
>
> ▸ Comment | One person found this helpful. Was this review helpful to you?   Yes   No   Report abuse

41.     On October 9, 2016, a customer, Gail B, complained that she received a poor quality product: "It may be a good product, but [half] of the tablets or pills turned to power.  So, it was not very useable and not a good [buy].  I am sorry that I ordered it."

> ⭐☆☆☆☆ **It may be a good product, but have of the tablets or pills ...**
> By Gail B on October 9, 2016
> Size: 270 Count | Verified Purchase
>
> It may be a good product, but have of the tablets or pills had turned to powder.
> So, it was not very useable and not a good but.
> I am sorry that I ordered it.
>
> ▸ Comment | One person found this helpful. Was this review helpful to you?   Yes   No   Report abuse

42.     On November 18, 2016, a customer, 1239874, complained that he received an expired product: "The order arrived today (11/18/16).  The manufactured date is 06/15."

> ⭐☆☆☆☆ **One Star**
> By 1239874 on November 18, 2016
> Size: 270 Count | Verified Purchase
>
> The order arrived today (11/18/16). The manufactured date is 06/15.
>
> ▸ 1 comment | Was this review helpful to you?   Yes   No   Report abuse

43.     On December 7, 2016, a customer complained that she received an expired product: "Will never order from them Green Supplements again.  Purchased Quiet Digestion on 12/6/16 expiration on bottle was 6/6/16 (6 months past expiration) I've ordered before and checked by 8/1/16 purchase order the expiration was April 2015 (a year and a half expired)."

///

///

///

1

2

3

4

5

6          44.      On February 13, 2017, a customer, Leeds Davis, complained that he received an

7   expired product: "This is the third time I've ordered a terrific product of Health Concerns.  All of

8   them have arrived with the expiry covered over because they are out of date as specified by the

9   manufacturer.  While these types of herbs have an indeterminate longevity, the vendor shouldn't

10  send out-of-date-products."

11

12

13

14

15         45.      On March 25, 2017, a customer, windzor, complained that he received an expired

16  and poor quality product: "Item arrived in a manila envelope … no safety seal on the bottle top

17  under the cap.  The pills were swollen, stuck together and all crumbling, and falling apart.  The

18  'sell by date' is a printed sticker that was placed over the 'MFD 02/16' date on the bottom of the

19  bottle.  The pictures should say it all.  Returning for a refund."

20

21

22

23

24

25

26

27

28  ///

46.     On March 25, 2017, another customer, Summer, complained that she received a poor quality product: "This was very disappointing.  I've taken this before, but when I got it in the mail, the pills were all crumbly and dry.  Very sad:(:("



47.     On December 22, 2017, a customer, Patricia Reple, complained that she received an expired product: "the product is very good, but it was expired, as a matter of fact there was a label with a different exp. date on the top of the original exp. date. the pills were all broken inside, typical when prod. is expired."



48.     On January 8, 2018, a customer, DanielJ, complained that he received a poor quality product: "Calm Spirit is a great sleep aid and I have been using this for years.  However, the last batch that I bought, within a few months, the tablets started cracking and crumbling in the container.  I don't know if this was a bad batch or what, but I'd be weary of purchasing these online …."

⭐☆☆☆☆  **Good supplement for sleep and/or anxiety, but pills begin to crack and crumble after a few months.**
By DanielJ on January 8, 2018
Size: 270 Count | Verified Purchase

Calm Spirit is a great sleep aid and I have been using this for years. However, the last batch that I bought, within a few months the tablets started cracking and crumbling in the container. I don't know if this was a bad batch or what, but I'd be weary of purchasing these online. We have had bottles where the tablets stayed intact for a year or more.

▸ Comment   Was this review helpful to you?   Yes   No   Report abuse

///

///

49.     Upon information and belief, the foregoing complaints were made by consumers who purchased products from unauthorized sellers of Health Concerns products.

### Health Concerns Has Implemented Quality Controls To Combat The Problems Presented By The Online Marketplaces And Protect The Value Of Its Trademarks

50.     Recognizing the health and safety risks to its consumers and the reputational concerns associated with the illegal sale of Health Concerns products by unauthorized sellers, Health Concerns has implemented a quality control program that applies to both brick and mortar retail settings and online sellers with the twin aims of protecting consumers and protecting the value and goodwill associated with the Health Concerns brand.

51.     The goal of this program is to ensure that consumers who buy Health Concerns products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Health Concerns name – in particular, safety and quality.

52.     The program seeks to minimize the likelihood that poor-quality products will reach consumers, which minimizes harm to the brand's goodwill.

53.     Health Concerns' ability to exercise these quality controls is particularly important for the products it sells because consumers ingest the products and there are numerous health and safety risks associated with consumers ingesting products that are expired or that have not been stored and handled properly.

54.     Health Concerns' ability to exercise these quality controls is essential to the integrity, safety, and quality of Health Concerns products, as well as the value of the Health Concerns Trademarks and other intellectual property.

### Authorized Resellers Are Required To Adhere To Health Concerns' Quality Control And Customer Service Requirements

55.     Health Concerns maintains its strict quality controls over Health Concerns products by conducting all sales through its Authorized Resellers.

///

///

56.     Authorized Resellers are permitted to sell Health Concerns products only in approved channels and are required to abide by Health Concerns' policies, purchase terms and conditions, and other sales practices (collectively, the "Health Concerns Rules").

57.     To prevent third parties from acquiring and reselling Health Concerns products, the Health Concerns Rules permit Authorized Resellers to sell products only to end users.  Authorized Resellers are prohibited from selling Health Concerns products to anyone who intends to resell the products.

58.     Authorized Resellers are also prohibited from selling Health Concerns products on any website, including third-party marketplaces such as Amazon, eBay, Walmart Marketplace, or Craigslist, without prior written consent of Health Concerns.

59.     These restrictions allow Health Concerns to know who its Authorized Resellers are, which ones are selling online, and how to immediately contact them.

60.     The Health Concerns Rules require Authorized Resellers to adhere to Health Concerns' quality control requirements.

61.     To ensure that customers receive the genuine and high-quality products they expect from Health Concerns, the Health Concerns Rules require that Authorized Resellers inspect all products for damages, defects, evidence of tampering, and other non-conformance and remove all such products from inventory.  To prevent the sale of expired products, Authorized Resellers are also required to inspect inventory for expired or soon-to-be expired products and to remove those products from inventory.

62.     The Health Concerns Rules also require that Authorized Resellers store products in accordance with guidelines issued by Health Concerns. Importantly, for the health and safety of consumers, Authorized Resellers must store products in a cool, dry place, away from direct sunlight, and accordance with any other storage guidelines.

63.     To avoid consumer confusion and ensure that customers receive genuine Health Concerns products, Authorized Resellers are prohibited from relabeling, repackaging, or altering Health Concerns products.  Authorized Resellers must not remove, translate, or modify the contents of any label or literature on or accompanying Health Concerns products.  Further,

Authorized Resellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Health Concerns products, including lot codes, batch codes, and UPCs.

64.    Health Concerns also ensures that consumers receive safe products by requiring that Authorized Resellers assist with recalls and other consumer safety information efforts.

65.    The Health Concerns Rules also require that Authorized Resellers provide certain services to their customers.  Authorized Resellers must familiarize themselves with the features of all Health Concerns products kept in their inventory.  This requirement ensures that Authorized Resellers are uniquely qualified not only to recommend the Health Concerns products best suited for end-user consumers' needs and well-being, but also to advise end-user consumers on how to use Health Concerns products safely and properly.

66.    Following the sale of genuine Health Concerns products, Authorized Resellers supply ongoing support to end-user consumers and are endeavored to provide expeditious customer service by responding to consumer inquiries.

67.    Health Concerns' quality control requirements are legitimate, substantial, and non-pretextual and have been implemented so that Health Concerns can control the quality of goods manufactured and sold under the Health Concerns Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Health Concerns Trademarks.

68.    These quality control requirements are also material.  Consumers would find it relevant that these quality controls exist and that Heath Concerns exercises these quality controls over the products sold by its Authorized Resellers, but that it is unable to exercise its quality controls over products sold by unauthorized sellers.

**Authorized Resellers Must Be Approved To Sell Online And Must Comply With Additional Requirements**

69.    In order to sell Health Concerns products online, Authorized Resellers are vetted and must be approved by Health Concerns to be an authorized online reseller ("Authorized Online Resellers").  Authorized Online Resellers may sell Health Concerns products only on websites that Health Concerns has specifically approved.

///

70.     Authorized Online Resellers are vetted by Health Concerns to ensure that they meet Health Concerns' criteria and that they will properly represent the Health Concerns brand.

71.     Authorized Online Resellers must have an appropriately registered and recognized business that meets applicable criteria (i.e. credit, sales history, facility requirements).

72.     Authorized Online Resellers must also have an acceptable online review history, without a significant presence of negative product or seller reviews.

73.     Authorized Online Resellers must also have an acceptable business operating record, which includes evaluating, among other things, any lawsuits, complaints, or actions related to the delivery of damaged products, misrepresented products, poor-quality products, or other similar issues.

74.     In addition to complying with the quality controls and customer service requirements discussed above, Authorized Online Resellers must adhere to several additional requirements.

75.     In order for Health Concerns to be able to verify its Authorized Resellers, Authorized Online Resellers must clearly state their business name and current contact information on the websites where they sell, unless otherwise approved by Health Concerns.

76.     Authorized Online Resellers must also cooperate with any product tracking Health Concerns implements or utilizes.

77.     Authorized Online Resellers must have a mechanism for soliciting customer feedback/reviews and must take appropriate steps to address that feedback.  Authorized Online Resellers must cooperate with Health Concerns in investigating any negative product reviews.

78.     Authorized Online Resellers who sell on Amazon must also maintain a certain seller feedback score.

79.     To further its efforts and ability to protect the value and goodwill associated with the Health Concerns brand and to prevent consumer confusion, Health Concerns has approved only one Authorized Online Reseller on the Amazon Marketplace.  This limitation allows Health Concerns to closely monitor seller and product reviews and to address any issues directly with its approved seller.  This limitation also helps prevent the confusion that exists when consumers are

presented with many marketplace sellers and are unable to discern which are authorized and subject to Health Concern's quality controls.

### Health Concerns Ensures That Its Authorized Online Resellers Comply With Its Quality Control Requirements

80. In order to ensure that its Authorized Online Resellers adhere to Health Concerns' quality control requirements, Health Concerns regularly monitors sales of its products online.

81. Pursuant to this program, Health Concerns regularly monitors Authorized Online Resellers and online product and seller reviews, conducts test purchases and inspections, and confirms Authorized Online Resellers' compliance with all of its quality control and Authorized Online Reseller requirements.

82. With respect to online marketplaces, Health Concerns communicates with its authorized marketplace sellers to understand the nature of any negative reviews and to facilitate appropriate follow-on action items.  Health Concern is also able to discipline sellers who fail to comply.

83. In addition to auditing its Authorized Online Resellers, due to the health and safety risks to customers and reputational concerns associated with the illegal sale of products bearing the Health Concerns Trademarks by unauthorized Internet sellers, Health Concerns polices the sale of its products online.

### Genuine Health Concerns Products Come With A Guarantee; Defendant's Products Do Not

84. Health Concerns products purchased from Health Concerns and Health Concerns' Authorized Resellers also come with Health Concerns' Satisfaction Guarantee (the "Guarantee"). The Guarantee allows a customer that is not completely satisfied with the efficacy of the product he/she purchased from Health Concerns to return the product within 60 days of purchase for a credit or replacement.

85. Because products sold by unauthorized sellers are not subject to Health Concerns' quality control requirements and Health Concerns cannot ensure the quality of the products sold

by unauthorized sellers, the Guarantee is not available for Health Concerns products sold by unauthorized sellers, like Defendant, or through unauthorized channels, unless prohibited by law.

**Defendant Is Illegally Selling Products Bearing The Health Concerns Trademarks And Interfering With Health Concerns' Quality Controls**

86.    Through policing its brand online, Health Concerns discovered products bearing the Health Concerns Trademarks being illegally sold by Defendant on Amazon under the storefront name "Premium Health INC."

87.    Defendant is not an Authorized Reseller of Health Concerns products.

88.    Defendant sells products on the Premium Health INC storefront anonymously.

89.    Because Defendant is not an Authorized Reseller of Health Concerns products and sells products anonymously, Health Concerns is unable to exercise control over the quality of products Defendant sells bearing the Health Concerns Trademarks.

90.    Defendant's sale of products bearing the Health Concerns Trademarks interferes with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to ensure it is complying with Health Concerns' quality controls and/or close its account if it fails to comply with Health Concerns' quality control requirements.

91.    The products Defendant sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns and are not subject to Health Concerns' quality controls.

92.    The products Defendant sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

93.    The products Defendant sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products, which are essential elements of Health Concerns products.

///

94.     Despite these facts, Defendant has sold, and continues to sell, products bearing the Health Concerns Trademarks through the Premium Health INC storefront without Health Concerns' consent.

95.     Upon information and belief, Defendant, through its storefront, accepts and fulfills orders from California residents for products bearing the Health Concerns Trademarks and ships products bearing the Health Concerns Trademarks to persons located in California.

**Consumers Have Complained About The Products Defendant Sells On The Premium Health INC Storefront**

96.     Several consumers have complained about the products they were sold by Defendant through the Premium Health INC storefront.

97.     These complaints are typical of the complaints made about products sold by unauthorized sellers, including the sale of expired and poor quality products.

98.     On August 9, 2017, a customer, adam, complained that he received an expired product with the expiration date scratched out: "Shady business practice, item arrived with expiration date scratched out.  Also there is a dark substance inside the plastic wrap by the cap."

⭐☆☆☆☆   *" Shady business practice, item arrived with expiration date scratched out. Also there is a dark substance inside the plastic wrap by the cap. "*
By adam on August 9, 2017.

99.     On May 22, 2017, a customer, Donna J. Dagner, complained that she received a poor quality product: "I am a prior customer.  I bought this item 2 years ago from a vendor and really loved it.  I reordered from Amazon.  Consistency seems different."

⭐⭐⭐⭐⭐   *" I am a prior customer. I bought this item 2 years ago from a vendor and really love it. I reordered from Amazon. Consistency seems different. "*
By Donna J. Dagner on May 22, 2017.

100.     On May 20, 2017, a customer, Susan R. Wagoner, complained that she received the wrong product: "I ordered 180 pure encapsulation Digestive Enzymes Ultra with Betaine HCL and received instead 180 Digestive Enzymes Ultra. It is missing the HCL.  Please send me the correct order of 180 Digestive Enzymes Ultra WITH betaine HCL.  Thank you!"

★☆☆☆☆ *"I ordered 180 pure encapsulation Digestive Enzymes Ultra with Betaine HCL and received instead 180 Digestive Enzymes Ultra. It is missing the HCL. Please send me the correct order of 180 Digestive Enzymes Ultra WITH betaine HCL. Thank you!"*
Read less

By Susan R. Wagoner on May 20, 2017.

**Health Concerns Has Repeatedly Attempted To Stop Defendant's Illegal Sale Of Products Bearing The Health Concerns Trademarks But Defendant Continues To Willfully Infringe On The Health Concerns Trademarks**

101.     After Health Concerns discovered products bearing the Health Concerns Trademarks being illegally sold on the Premium Health INC storefront, Health Concerns investigated the storefront to determine who was operating the storefront.

102.     The Premium Health INC storefront contains no contact information.  Despite spending significant time and money investigating the storefront, Health Concerns was unable to confidently identify who was behind the storefront.  Defendant succeeded in keeping its identity anonymous.

103.     On or about November 13, 2017, counsel for Health Concerns sent a cease and desist letter to Defendant's Amazon account through Amazon's messaging system, demanding that it immediately cease selling products bearing the Health Concerns Trademarks.

104.     Defendant did not respond and continued to sell products bearing the Health Concerns Trademarks on the Premium Health INC storefront.

105.     On or about November 15, 2017, Health Concerns' attorneys received information through a subpoena that identified the operators of the Premium Health INC storefront as Anthony Gioa and Tsalevich LLC, 18 Claudia Court, Staten Island, NY, US 10303-2143.

106.     After conducting further investigation, Health Concerns determined that Tsalevich LLC is a limited liability company registered in New York with an address of 18 Claudia Court, Staten Island, New York 10303.

107.     Health Concerns also discovered that the address of 18 Claudia Court, Staten Island, New York 10303 is the home address for Helen Tsalevich and the registered address for her law firm, Helen Thomas LLP.

108.     Despite spending significant investigation time and money, Health Concerns was unable to locate anyone in New York with the name Anthony Gioa.

109.    After conducting this additional investigation and not receiving a response to the letter it sent Defendant's Amazon account, on November 17, 2017, counsel for Health Concerns sent a cease and desist letter to Tsalevich LLC at 18 Claudia Court, Staten Island, NY 10303-2143, again demanding that Defendant immediately cease and desist selling products bearing the Health Concerns Trademarks.

110.    Defendant did not respond and continued to sell products bearing the Health Concerns Trademarks on the Premium Health INC storefront.

111.    On November 29, 2017, counsel for Health Concerns sent another letter to Tsalevich LLC at 18 Claudia Court, Staten Island, NY 10303-2143.  The letter was also addressed to Helen Thomas LLP and Helen Tsalevich.  The letter attached a draft of a complaint and advised Defendant that if it did not immediately cease and desist selling products bearing the Health Concerns Trademarks, then Health Concerns would proceed with filing the complaint

112.    On December 7, 2017, Helen Tsalevich sent an email to Health Concerns' attorneys stating that she was not associated with Premium Health INC on Amazon and that she was not purchasing Health Concerns products for resale.

113.    Health Concerns' attorneys responded to Ms. Tsalevich that day and explained that they had confirmed that Premium Health INC was registered to Tsalevich LLC at 18 Claudia Court, Staten Island, NY 10303, that address is also her home address and the registered address for her law firm, and that it was clear that she was associated with the storefront.  The email also demanded that she immediately remove all products bearing the Health Concerns Trademarks from the Premium Health INC storefront.  Ms. Tsalevich did not respond to this email and Defendant continued to list products bearing the Health Concerns Trademarks on the Premium Health INC storefront.

114.    On December 19, 2017, counsel for Health Concerns sent another email to Ms. Tsalevich and the registered email account for the Premium Health INC storefront explaining that Health Concerns knew Tsalevich LLC was the entity operating the storefront and that if it did not immediately remove all products bearing the Health Concerns Trademarks from the Premium Health INC storefront, then Health Concerns would file a lawsuit against Tsalevich LLC.

115.    Defendant did not respond to this email and continues to offer products bearing the Health Concerns Trademarks on the Premium Health INC storefront.

116.    For the reasons discussed above, the products Defendant sells are not genuine Health Concerns products, are not subject to Health Concerns' quality control requirements, interfere with Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

117.    By continuing to sell non-genuine products bearing the Health Concerns Trademarks, Defendant has interfered with Health Concerns' ability to exercise control over products being sold bearing the Health Concerns Trademarks.

118.    Defendant has also misled, and continues to mislead, consumers into believing they are purchasing genuine Health Concerns products when, in fact, they are not.

119.    Defendant's actions infringe on the Health Concerns Trademarks.

120.    Further, Defendant's disregard of communications from Health Concerns and continued selling of non-genuine products, despite being informed of its unlawful conduct, demonstrates that it is acting intentionally, willfully, and maliciously.

**Defendant Is Tortiously Interfering With Health Concerns' Agreements
With Its Authorized Resellers**

121.    Upon information and belief, Defendant has purchased Health Concerns products from Health Concerns' Authorized Resellers for purposes of reselling them on the Internet.

122.    The Health Concerns Rules prohibit Health Concerns' Authorized Resellers from selling Health Concerns products to third parties who intend to resell the products.

123.    Defendant was informed of this prohibition by at least November 13, 2017. Indeed, the cease and desist letters Health Concerns sent Defendant on November 13 and 17, 2017 informed Defendant that Health Concerns restricts the manner in which Authorized Resellers may sell Health Concerns products and that Authorized Resellers may sell Health Concerns products only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products.

124.   Defendant were also informed that by purchasing Health Concerns products from an Authorized Reseller for purposes of resale, it  was causing a breach of the agreement between Health Concerns and its Authorized Reseller and interfering with Health Concerns' agreements and business relationships.

125.   Defendant was also advised that if it continued to acquire Health Concerns products from Health Concerns' Authorized Resellers for purposes of resale, it would be liable for tortiously interfering with Health Concerns' contracts and/or business relationships.

126.   Despite being provided this information, upon information and belief, Defendant has continued to acquire Health Concerns products from Health Concerns' Authorized Resellers.

127.   Upon information and belief, Defendant willfully and knowingly induced unknown Authorized Resellers to breach their agreements with Health Concerns so that it could acquire Health Concerns products and resell them.

**Plaintiffs Have Suffered Significant Harm
As A Result Of Defendant's Conduct**

128.   Plaintiffs have suffered, and will continue to suffer, significant monetary harm as a result of Defendant's actions, including, but not limited to, loss of sales, damage to their intellectual property, and damage to their existing and potential business relations.

129.   Plaintiffs have suffered, and will continue to suffer, irreparable harm to their reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

130.   Plaintiffs are entitled to injunctive relief because Defendant will continue to unlawfully sell Health Concerns products and infringe on the Health Concerns Trademarks, causing continued irreparable harm to Plaintiffs' reputation, goodwill, relationships, intellectual property, and brand integrity.

131.   Defendant's conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

132.   Defendant's willful violations of the Health Concerns Trademarks and continued pattern of misconduct demonstrate intent to harm Plaintiffs.

**FIRST CLAIM FOR RELIEF**

**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)(1)(a)**

133.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

134.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

135.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

136.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

137.    Defendant willfully and knowingly used, and continues to use, the Health Concerns Trademarks in interstate commerce for the purpose of selling products bearing the Health Concerns Trademarks without the consent of Health Concerns.

138.    The products Defendant sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

139.    Defendant's unauthorized sale of products bearing the Health Concerns Trademarks interferes with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to confirm it is complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

140.    The products Defendant sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

141.    The products Defendant sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

///

142. Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are subject to Health Concerns' quality controls when they are not.

143. Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are genuine Health Concerns products when they are not.

144. Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Health Concerns when they are not.

145. Defendant's unauthorized use of the Health Concerns Trademarks has infringed upon and materially damaged the value of the Health Concerns Trademarks and caused significant damage to Plaintiffs' business relationships.

146. As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

147. Plaintiffs are entitled to recover their damages caused by Defendant's infringement of the Health Concerns Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

148. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

149. Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Health Concerns Trademarks.

///

**SECOND CLAIM FOR RELIEF**

**False Advertising**
**15 U.S.C. § 1125(a)(1)(b)**

150.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

151.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

152.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

153.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

154.    Defendant willfully and knowingly used, and continues to use, the Health Concerns Trademarks in interstate commerce, including through its product listings on Amazon, for the purpose of advertising promoting, and selling products bearing the Health Concerns Trademarks without the consent of Health Concerns.

155.    Defendant's advertisements and promotions of products unlawfully using the Health Concerns Trademarks have been disseminated to the relevant purchasing public.

156.    The products Defendant advertises, promotes, and sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

157.    Defendant's unauthorized advertisements, promotions, and sales of products bearing the Health Concerns Trademarks interfere with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to confirm it is  complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

///

///

158.    The products Defendant advertises, promotes, and sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

159.    The products Defendant advertises, promotes, and sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

160.    Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products are subject to Health Concerns quality control requirements when they are not.

161.    Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products come with the Guarantee and customer service benefits that accompany genuine Health Concerns products when they do not.

162.    Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are genuine and authentic Health Concerns products when they are not.

163.    Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Health Concerns when they are not.

164.    Defendant's unauthorized and deceptive use of the Health Concerns Trademarks is material and likely to influence customers to purchase the products it sells, as consumers are likely

to believe that products Defendant advertises using the Health Concerns Trademarks are genuine Health Concerns products that are subject to Health Concerns' quality controls requirement and come with the Guarantee other benefits associated with authentic Health Concerns products when they do not.

165.    Defendant's unauthorized use of the Health Concerns Trademarks in advertising, and otherwise, infringes on the Health Concerns Trademarks.

166.    As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

167.    Plaintiffs are entitled to recover their damages caused by Defendant's infringement of the Health Concerns Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

168.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

169.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Health Concerns Trademarks.

## THIRD CLAIM FOR RELIEF

### Unfair Competition
### 15 U.S.C. § 1125(a)

170.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

171.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

172.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

173.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

174.    Defendant willfully and knowingly used, and continues to use, the Health Concerns Trademarks in commerce for the purpose of selling and advertising products bearing the Health Concerns Trademarks without the consent of Health Concerns.

175.    The products Defendant advertises and sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

176.    Defendant's unauthorized advertisement and sale of products bearing the Health Concerns Trademarks interferes with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to confirm it is complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

177.    The products Defendant advertises and sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

178.    The products Defendant advertises and sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

179.    Defendant's use of the Health Concerns Trademarks in connection with its unauthorized sale and advertising of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are subject to Health Concerns' quality control program when they are not.

180.    Defendant's use of the Health Concerns Trademarks in connection with its unauthorized sale and advertising of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are genuine Health Concerns products when they are not.

///

181.    Defendant's use of the Health Concerns Trademarks in connection with its unauthorized sale and advertising of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are sponsored by, authorized by, approved by, or otherwise connected with Health Concerns when they are not.

182.    Defendant's unauthorized sale of products bearing Health Concerns Trademarks and unauthorized use of Health Concerns Trademarks in advertising infringes on the Health Concerns Trademarks.

183.    Defendant's unauthorized sale of products bearing Health Concerns Trademarks, and unauthorized use of Health Concerns Trademarks in advertising, has materially damaged the value of the Health Concerns Trademarks and has caused significant damages to Plaintiffs' business relations.

184.    As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

185.    Plaintiffs are entitled to recover their damages caused by Defendant's infringement of the Health Concerns Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

186.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

187.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Health Concerns Trademarks.

///

///

///

///

**FOURTH CLAIM FOR RELIEF**

**Trademark Dilution**
**15 U.S.C. § 1125(c)**

188.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

189.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

190.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

191.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

192.    Goode filed the HEALTH CONCERNS® trademark on October 15, 1998, and it was registered on January 18, 2000.  Health Concerns has actively, continuously, and exclusively used the HEALTH CONCERNS® trademark since that time.

193.    Health Concerns has expended substantial time, effort, money, and resources advertising and promoting its products and services under the HEALTH CONCERNS® trademark.

194.    Health Concerns markets, advertises, and sells products using the HEALTH CONCERNS® trademark throughout the United States.

195.    The HEALTH CONCERNS® trademark is the means by which Health Concerns products and services are distinguished from others in the marketplace.

196.    The HEALTH CONCERNS® trademark is associated with bringing the centuries of knowledge amassed in the Chinese herbal tradition to the West and offering a variety of Chinese herbal formulas for a full range of TCM treatment protocols, as well as many products that address the specific conditions of Western patients.

197.    The HEALTH CONCERNS® trademark is also recognized as providing a reliable, worry-free source of effective, quality Chinese herbs that are subject to stringent herb sourcing, quality controls, and testing for maximum potency and purity.

///

198.    The HEALTH CONCERNS® trademark is inherently distinctive, and as a result of Health Concerns' long, continuous, and exclusive use of the HEALTH CONCERNS® trademark, it has acquired a secondary meaning associated by purchasers and the public with Health Concerns' products and services.

199.    Health Concerns is widely recognized as the designated source of goods bearing the HEALTH CONCERNS® trademark.

200.    The HEALTH CONCERNS® trademark is famous, distinctive, and widely recognized marks by the consuming public.

201.    After the HEALTH CONCERNS® trademark became famous, Defendant willfully and knowingly used, and continues to use, the HEALTH CONCERNS® trademark in commerce for purposes of selling products bearing the HEALTH CONCERNS® trademark on the Internet without Health Concerns' consent.

202.    Defendant's willful use of the HEALTH CONCERNS® trademark in connection with the unauthorized and illegal sale of its products dilutes the HEALTH CONCERNS® trademark because the products Defendant sells are not subject to Health Concerns' quality controls and interfere with Health Concerns' ability to exercise control over the quality of its products.

203.    Consumers who receive poor quality products from Defendant associate that lack of quality with Health Concerns and the HEALTH CONCERNS® trademark.

204.    Consumers who receive poor quality products submit negative online reviews disparaging Health Concerns and the HEALTH CONCERNS® trademark.   These negative reviews influence other consumers and cause them to become less likely to purchase Health Concerns products and trust products bearing the HEALTH CONCERNS® trademark.

205.    As a result, Defendant's unauthorized and willful use of the HEALTH CONCERNS® trademark has tarnished and diluted the HEALTH CONCERNS® trademark

206.    As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

207.     Plaintiffs are entitled to recover their damages caused by Defendant's infringement of the Health Concerns Trademarks and disgorge Defendant's profits from its willfully infringing sales and unjust enrichment.

208.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

209.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendant willfully, intentionally, maliciously, and in bad faith infringed on the Health Concerns Trademarks.

### FIFTH CLAIM FOR RELIEF

### Common Law Trademark Infringement

210.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

211.     Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

212.     Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

213.     The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

214.     The Health Concerns Trademarks are distinctive and widely recognized marks by the consuming public.  Health Concerns products are sold and purchased through its Authorized Resellers throughout the United States, including California.

215.     Health Concerns is widely recognized as the designated source of goods bearing the Health Concerns Trademarks.

216.      Defendant willfully and knowingly used, and continues to use, the Health Concerns Trademarks in interstate commerce for the purpose of selling products bearing the Health Concerns Trademarks without Health Concerns' consent.

///

///

217.   The products Defendant sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

218.   Defendant's unauthorized sale of products bearing the Health Concerns Trademarks interferes with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to confirm it is complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

219.   The products Defendant sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

220.   The products Defendant sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

221.   Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are subject to Health Concerns' quality control program when they are not.

222.   Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are genuine Health Concerns products when they are not.

223.   Defendant's unauthorized sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Health Concerns when they are not.

224.   Defendant's knowing and willful use of the Health Concerns Trademarks in connection with the unauthorized and illegal sale of products bearing the Health Concerns

Trademarks without Health Concerns' consent infringes on the Health Concerns Trademarks and is contrary to honest practice in industrial and commercial matters.

225.    Defendant's unlawful actions and unauthorized use of the Health Concerns Trademarks has materially damaged the value of the Health Concerns Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Health Concerns Trademarks.

226.    As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm, as well as damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

227.    Plaintiffs are entitled to punitive damages because Defendant acted with oppression, fraud, and malice.

### SIXTH CLAIM FOR RELIEF

### Trademark Dilution Under Cal. Bus. & Prof. Code § 14247

228.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

229.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

230.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

231.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

232.    Goode filed the HEALTH CONCERNS® trademark on October 15, 1998, and it was registered on January 18, 2000.  Health Concerns has actively, continuously, and exclusively used the HEALTH CONCERNS® trademark since that time.

233.    Health Concerns has expended substantial time, effort, money, and resources advertising and promoting its products and services under HEALTH CONCERNS® trademark.

234.    Health Concerns markets, advertises, and sells products using the HEALTH CONCERNS® trademark throughout the United States, including in California.

///

235.    The HEALTH CONCERNS® trademark is the means by which Health Concerns products and services are distinguished from others in the marketplace.

236.    The HEALTH CONCERNS® trademark is associated with bringing the centuries of knowledge amassed in the Chinese herbal tradition to the West and offering a variety of Chinese herbal formulas for a full range of TCM treatment protocols, as well as many products that address the specific conditions of Western patients.

237.    The HEALTH CONCERNS® trademark is also recognized as providing a reliable, worry-free source of effective, quality Chinese herbs that are subject to stringent herb sourcing, quality controls, and testing for maximum potency and purity.

238.    The HEALTH CONCERNS® trademark is inherently distinctive, and as a result of Health Concerns' long, continuous, and exclusive use of the HEALTH CONCERNS® trademark, it has acquired a secondary meaning associated by purchasers and the public with Health Concerns' products and services.

239.    Health Concerns is widely recognized as the designated source of goods bearing the HEALTH CONCERNS® trademark.

240.    The HEALTH CONCERNS® trademark is famous, distinctive, and widely recognized marks by the consuming public.

241.    After the HEALTH CONCERNS® trademark became famous, Defendant willfully and knowingly used, and continue to use, the HEALTH CONCERNS® trademark in commerce for purposes of selling products bearing the HEALTH CONCERNS® trademark on the Internet without Health Concerns' consent.

242.    Defendant's willful use of the HEALTH CONCERNS® trademark in connection with the unauthorized and illegal sale of its products dilutes the HEALTH CONCERNS® trademark because the products Defendant sells are not subject to Health Concerns' quality controls and interfere with Health Concerns' ability to exercise control over the quality of its products.

243.    Consumers who receive poor quality products from Defendant associate that lack of quality with Health Concerns and the HEALTH CONCERNS® trademark.

244. Consumers who receive poor quality products submit negative online reviews disparaging Health Concerns and the HEALTH CONCERNS® trademark. These negative reviews influence other consumers and cause them to become less likely to purchase Health Concerns products and trust products bearing the HEALTH CONCERNS® trademark.

245. As a result, Defendant's unauthorized and willful use of the HEALTH CONCERNS® trademark has tarnished and diluted the HEALTH CONCERNS® trademark

246. As a proximate result of Defendant's actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

247. Plaintiffs are entitled to injunctive relief under Cal. Bus. & Prof. Code § 14247(a) because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

248. Plaintiffs are entitled to award of attorneys' fees, expenses, and punitive damages under Cal. Bus. & Prof. Code §§ 14247(b) and 14250(c) because Defendant acted willfully.

## SEVENTH CLAIM FOR RELIEF

### Violation of Business and Professions Code §§ 17200, *et seq.*

249. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

250. Defendant willfully and knowingly used, and continue to use, the Health Concerns Trademarks in interstate commerce for the purpose of advertising, marketing, and selling products bearing the Health Concerns Trademarks without the consent of Health Concerns.

251. The products Defendant sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

252. Defendant's unauthorized sale of products bearing the Health Concerns Trademarks interferes with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to

confirm it is complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

253. The products Defendant sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

254. The products Defendant sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

255. Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products are subject to Health Concerns quality control requirements when they are not.

256. Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products come with the Guarantee and customer service benefits that accompany genuine Health Concerns products when they do not.

257. Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are genuine and authentic Health Concerns Products when they are not.

258. Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Health Concerns when they are not.

259.   Defendant's unauthorized and deceptive use of the Health Concerns Trademarks is material and likely to influence customers to purchase the products it sells, as consumers are likely to believe that products Defendant advertises using the Health Concerns Trademarks are genuine Health Concerns products that are subject to Health Concerns' quality controls requirement and come with the Guarantee other benefits associated with authentic Health Concerns products when they do not.

260.   Defendant's actions constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

261.   Defendant's actions constitute unfair, deceptive, untrue, and/or misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

262.   Defendant have also knowingly and willfully obtaining Health Concerns products through unlawful means and in violation of Health Concerns' agreements with its Authorized Resellers.  Specifically, Defendant has continued to acquire Health Concerns products through Health Concerns' Authorized Resellers for purposes of reselling those products on the Internet despite knowing that Health Concerns' agreements with its Authorized Resellers prohibit them from selling products to third parties for purposes of resale.

263.   Defendant's actions constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of violate Cal. Bus. & Prof. Code §§ 17200 *et seq.*

264.   As a result of Defendant's unlawful actions, Plaintiffs have suffered, and continue to suffer, irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

265.   Plaintiffs are entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm

266.   Plaintiffs are entitled to recover civil penalties under Cal. Bus. & Prof. Code § 17206.

///

**EIGHTH CLAIM FOR RELIEF**

**Violation of Business and Professions Code §§ 17500, *et seq.***

267.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

268.    Plaintiffs are the owner and licensee of the Health Concerns Trademarks.

269.    Plaintiffs have registered the Health Concerns Trademarks with the United States Patent and Trademark Office.

270.    The Health Concerns Trademarks are valid and subsisting trademarks in full force and effect.

271.    Defendant willfully and knowingly used, and continues to use, the Health Concerns Trademarks in interstate commerce, including through its product listings on Amazon, for the purpose of advertising promoting, and selling products bearing the Health Concerns Trademarks without the consent of Health Concerns.

272.    Defendant's advertisements and promotions of products unlawfully using the Health Concerns Trademarks have been disseminated to the relevant purchasing public.

273.    The products Defendant advertises, promotes, and sells are not genuine Health Concerns products because the products are not authorized for sale by Health Concerns, are not subject to Health Concerns' quality controls, and are materially different from genuine Health Concerns products.

274.    Defendant's unauthorized advertisements, promotions, and sales of products bearing the Health Concerns Trademarks interfere with Health Concerns' ability to exercise quality control over products bearing the Health Concerns Trademarks because Health Concerns is unable to audit Defendant to confirm it is complying with Health Concerns' quality control requirements and/or close its account if it fails to comply with Health Concerns' quality control requirements.

275.    The products Defendant advertises, promotes, and sells are materially different from genuine Health Concerns products because they are not subject to, and interfere with, Health Concerns' quality controls.

276.   The products Defendant advertises, promotes, and sells are materially different from genuine Health Concerns products because they do not come with the Guarantee or customer service benefits that accompany genuine Health Concerns products.

277.   Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products are subject to Health Concerns quality control requirements when they are not.

278.   Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendant's products because it suggests that the products come with the Guarantee and customer service benefits that accompany genuine Health Concerns products when they do not.

279.   Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are genuine and authentic Health Concerns products when they are not.

280.   Defendant's use of the Health Concerns Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Health Concerns Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendant offers for sale are sponsored, authorized, or otherwise connected with Health Concerns when they are not.

281.   Defendant's unauthorized and deceptive use of the Health Concerns Trademarks is material and likely to influence customers to purchase the products it sells, as consumers are likely to believe that products Defendant advertises using the Health Concerns Trademarks are genuine Health Concerns products that are subject to Health Concerns' quality controls requirement and

Haight

come with the Guarantee other benefits associated with authentic Health Concerns products when they do not.

282.    The statements Defendant makes in its advertisement and promotion, of products bearing the Health Concerns Trademarks are untrue and misleading.

283.    Health Concerns has notified Defendant that its advertisements and promotions of products bearing the Health Concerns Trademarks are untrue and misleading, including through multiple cease and desist letters.

284.    Defendant continues to make untrue and misleading statements in its advertisement and promotion, of products bearing the Health Concerns Trademarks.

285.    Defendant's actions constitute false advertising in violation of Cal. Bus. & Prof. Code §§17500 *et seq.*

286.    As a of Defendant's unlawful actions, Plaintiffs have suffered, and continue to suffer, irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

287.    Plaintiffs are entitled to injunctive relief under Cal. Bus. & Prof. Code § 17535 because they have no adequate remedy at law for Defendant's infringement and unless Defendant is permanently enjoined, Plaintiffs will suffer irreparable harm.

288.    Plaintiffs are entitled to restitution under Cal. Bus. & Prof. Code § 17535.

289.    Plaintiffs are entitled to recover cumulative civil penalties under Cal. Bus. & Prof. Code §§ 17536 and 17534.5.

## NINTH CLAIM FOR RELIEF

### Tortious Interference with Contract and Business Relationships

290.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs.

291.    Health Concerns has contracts and business relationships with its Authorized Resellers, who have a contractual right to sell Health Concerns products in accordance with the Health Concerns Rules.

292.    The Health Concerns Rules and Health Concerns' agreements with its Authorized Resellers restrict the manner in which Authorized Resellers may sell Health Concerns products. Specifically, the Health Concerns Rules and Health Concerns' agreements with its Authorized Resellers stipulate that Authorized Resellers may sell only to end-user consumers through approved channels.  Authorized Resellers are prohibited from selling or transferring Health Concerns products to any person or entity for resale without the prior written consent of Health Concerns.

293.    Defendant knew that the Health Concerns Rules and Health Concerns' agreements with its Authorized Resellers prohibit Health Concerns' Authorized Resellers from selling Health Concerns products to third parties, such as Defendant, for purposes of resale.

294.    Defendant was provided notice of this prohibition by at least November 13, 2017, through the cease and desist letter it received from Health Concerns.

295.    Despite Defendant's having knowledge of this prohibition, it willfully and knowingly interfered with the Health Concerns Rules and Health Concerns' agreements with its Authorized Resellers by inducing Health Concerns' Authorized Resellers to breach their agreements and sell products to Defendant so that it could resell them on the Internet.

296.    Defendant acted with a wrongful purpose by acquiring products from Authorized Resellers for the purpose of resale in violation of the Health Concerns Rules and Health Concerns' agreements with its Authorized Resellers.

297.    Defendant's actions caused injury to Plaintiffs for which Plaintiffs are entitled to damages in an amount to be proven at trial.

298.    Plaintiffs are entitled to punitive damages because Defendant acted with oppression, fraud, and malice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.    Judgment in favor of Plaintiffs and against Defendant in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble

damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      Preliminary and permanent injunctions enjoining Defendant and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendant, and all of those in active concert and participation with Defendant (the "Enjoined Parties") as follows:

   i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Health Concerns products or products bearing the Health Concerns Trademarks,

   ii)     Prohibiting the Enjoined Parties from using any of the Health Concerns Trademarks in any manner, including advertising on the Internet,

   iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Health Concerns products as well as any products bearing any of the Health Concerns Trademarks,

   iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Health Concerns Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendant has sold bearing these trademarks,

   v)     Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any of Health Concerns' products, or any of the Health Concerns Trademarks,

   vi)    Requiring the Enjoined Parties to take all action, including but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove from the Internet any of the Health Concerns Trademarks which

associate Health Concerns' products or the Health Concerns Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts,

vii)    Requiring the Enjoined Parties to take all action to remove unauthorized Health Concerns Trademarks from the Internet, including from the websites www.amazon.com and;

C.    An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiffs demand a trial by jury of all issues so triable.

Dated:  February 7, 2018                    HAIGHT BROWN & BONESTEEL LLP


By:    _____
       Howard M. Garfield
       Omar Parra
       Attorneys for ADG CONCERNS, INC. d/b/a
       HEALTH CONCERNS, a Washington
       corporation, and GOODE, INC., a Nevada
       corporation